U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 17 2011
CLERK, U.S. DISTRICT COURT
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DWIGHT D. RUGGLES, §
Plaintiff. §
§
VS. § CIVIL ACTION NO. 4:10-CV-533-A
§
MICHAEL J. ASTRUE, §
Commissioner of the Social Security §
Administration, §
Defendant. §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Dwight D. Ruggles ("Ruggles"), filed applications for Title II disability insurance benefits ("DIB") on February 21, 2007, alleging a disability onset date of February 10, 2006.[1] (Transcript ("Tr.") 18, 117-21.) After his application was denied initially and on reconsideration, Ruggles timely requested a hearing before an administrative law judge ("ALJ") and a hearing was held before ALJ Ward D. King on March 19, 2009. (Tr. 35-72, 75-79, 86-89, 90-91.)

In his application, Ruggles claimed disability due to gastrointestinal disorders and affective mood disorders. (Tr. 18, 73-74.) On August 20, 2009, the ALJ issued a decision finding that Ruggles was not disabled. (Tr. 18-26.) On May 24, 2010, the Appeals Council denied Ruggles'

---

[1] Ruggles's last insured date for Title II purposes was December 31, 2008, meaning that he must establish disability on or before that date in order to be entitled to a period of disability and DIB. (Tr. 18-19); 42 U.S.C. §§ 416(i)(3) and 423(c)(1).

- 1 -

request for review. (Tr. 7-9.) Ruggles subsequently filed the instant action in federal court on July 29, 2010.[2] (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step

---

[2] The Appeals Council granted Ruggles an extension of time to file a civil action through July 29, 2010. (Tr. 1.)

five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUE

Ruggles presents the following issue:

> Whether the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence.

(Plaintiff's Brief ("Pl. Br.") at 1.)

### IV. ADMINISTRATIVE RECORD

#### A. Administrative Record

At his hearing before the ALJ, Ruggles was represented by an attorney and testified on his own behalf. (Tr. 35-72.) An impartial vocational expert ("VE"), Marie Dillon Snowden, Ph.D. ("Snowden"), and an independent medical expert ("ME"), Dr. David Sowell, M.D., ("Sowell"), also testified. (Tr. 18, 37.) Ruggles testified that he was born on December 4, 1965 and that he had a high school education. (Tr. 39-40.) He told the ALJ that he had not worked since just before

February 14, 2006, due to pain and fatigue, and constant pain, and burning and sharpness in his rectal area. (Tr. 40.) Ruggles testified that he took medications for his pain, including Hydrocodone, Naproxen, and Norflex, but that he never had complete relief from the pain. (Tr. 40-41.) He said that the medications got him through the day, but that if he took too much medication it affected his colostomy and he was forced to lie down to ease the pain because of the inflammation. (Tr. 41.) Ruggles said that the pain worsened when he sat or stood for too long. (Tr. 42-43.) He told the ALJ that he thought he could stand for about 30 to 40 minutes at a time and sit for 30 minutes at a time. (Tr. 43-44.) But he said he could not alternate standing and sitting for a full workday because he needed to lay down for much of the day. (Tr. 44.) Ruggles testified that he was able to drive himself occasionally and that he went to the grocery store or pharmacy once every few days. (Tr. 44.) He said that he could take a shower by himself but that he skipped showering about three times a week because of his pain. (Tr. 45.) Ruggles testified that his wife worked full time, and that he was able to make simple foods like frozen meals and sandwiches. (Tr. 46-47.) Ruggles said that he could dress himself but that his wife had to help him put on his shoes. (Tr. 47.) Ruggles told the ALJ that he no longer went to church because of the pain. (Tr. 48-49.) He also said that he used a "donut" cushion everywhere he sat. (Tr. 49.)

After hearing the testimony of ME Sowell, the ALJ posed a hypothetical question to VE Snowden, asking whether a hypothetical person with Ruggles' age, education, and work experience who 1) had the RFC to lift and carry 10 pounds occasionally and less than ten pounds frequently, 2) could sit throughout an eight-hour workday, 3) could stand and walk two hours in an eight-hour workday, but required a sit/stand option, 4) had additional limitations of no exposure to hazards, no working at unprotected heights, and no climbing ladders, scaffolds or ropes, and only 5) occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and had further limitation to jobs with a reasoning level of one or two as defined in the Dictionary of Occupational Titles (*DOT*), could perform any of Ruggles' past relevant work. (Tr. 68-69.) The VE responded that such a person was not capable of performing any of Ruggles' past relevant work, but that there

were jobs existing in significant numbers in the national economy that such a person could perform. (Tr. 69.) The VE identified the job of bench assembler, with approximately 160,000 jobs in the national economy and 8,000 jobs in Texas. (*Id.*) She also identified the unskilled bench inspector position, with approximately 40,000 jobs in the national economy and 2,300 in Texas. (*Id.*) Finally, the VE identified the machine tender group of jobs, with about 47,000 jobs in the national economy and 2,200 in Texas. (*Id.*) When asked by the ALJ whether there was any conflict between her testimony and the *DOT*, the VE responded that the only exception is that the *DOT* does not address the sit/stand option, but that she was basing her assessment on her own observation of those jobs. (Tr. 69-70.)

The ALJ then asked the VE if that same hypothetical individual would be able to perform the jobs she had identified if he were limited to no extensive and involved contact with the public, supervisors and co-workers, including no negotiating, selling, or resolving customer complaints. (Tr. 70.) VE Snowden responded yes. (*Id.*) She further testified that none of the jobs she identified require the ability to remember detailed instructions, but that they did require the ability to maintain attention and concentration for extended periods. (Tr. 70-71.)

### B. The ALJ's Decision

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 18-26.) At step one, the ALJ found that Ruggles met the disability insured status requirements of the Social Security Act through December 31, 2008. (Tr. 18.) He also found that Ruggles had not engaged in substantial gainful activity from February 10, 2006, his alleged onset date, through the date of the ALJ's decision. (*Id.*, citing 20 C.F.R. § 404.1571.)

At step two, the ALJ determined that Ruggles had a history of colorectal cancer (status-post chemotherapy and radiation therapy with residual chronic pain syndrome) and affective disorder. (Tr. 20.) The ALJ found that Ruggles had a "severe" combination of impairments. (*Id.*); 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); *Bowen v. Yuckert*, 482 U.S. 137

(1987); Social Security Regulation ("SSR") 96-3p. The ALJ continued to step three, finding that Ruggles did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 20); 20 C.F.R. § 404.1525 and 404.1526. The ALJ found that Ruggles' subjective complaints had "only limited credibility." (Tr. 21.)

> The ALJ determined that Ruggles retained the following RFC through his last insured date:
>
> he could lift and carry 10 pounds occasionally and less than ten pounds frequently; he could sit throughout an 8-hour workday; he could stand or walk two hours in an 8-hour workday (but he required a sit/stand option); and he could otherwise perform the full range of sedentary work, except: he could only occasionally climb ramps or stairs; he could only occasionally balance, stoop, kneel, crouch, or crawl; and he could have no exposure to hazards, such as unprotected dangerous machinery, and no working at unprotected heights, *e.g.*, no climbing ladders, scaffolds, or ropes. Further, Mr. Ruggles could have no extensive and involved contact with the public, supervisors, and co-workers (*e.g.*, no negotiating, selling, or resolving customer complaints for an employer), and he was limited to jobs with a reasoning development level of 1 or 2, as defined in the *Dictionary of Occupational Titles*. Mr. Ruggles had no other exertional or nonexertional limitations. He could then work full-time at this residual functional capacity on a consistent, sustained basis and maintain employment for an indefinite period of time (*See Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) and 20 C.F.R. § 404.1567(a)).

(Tr. 20.)

At step four, the ALJ determined that Ruggles was unable to perform any of his past relevant work. (Tr. 24-25.)

At step five, the ALJ determined that, given Ruggles' age, education, work experience, and RFC through his date last insured, there were jobs existing in significant numbers in the national economy that Ruggles could have performed. (Tr. 25, citing 20 C.F.R. § 404.1569 and 404.1569a.) The ALJ specifically identified the following occupations: (1) bench assembler, with 8,000 jobs in Texas and 160,000 jobs in the national economy, (2) bench inspector, with 2,300 jobs in Texas and 40,000 jobs in the national economy, and 3) machine tender, with 2,200 jobs in Texas and 47,000 jobs in the national economy. (Tr. 25.) Ultimately, the ALJ concluded that Ruggles was not disabled within the meaning of the Act at any time from his alleged date of onset, February 10, 2006, through his date last insured, December 31, 2008. (Tr. 26.)

# V. DISCUSSION

Ruggles complains that the ALJ erred in his determination of Ruggles' RFC and that his determination was not based on substantial evidence. (Pl. Br. at 13.) Specifically, Ruggles argues that (1) the RFC fails to account for Ruggles' deficits in concentration and other mental limitations established in the record; and (2) the ALJ failed to give adequate weight to Ruggles' testimony and to the evidentiary documents Ruggles submitted describing his limitations from pain. (*Id.* at 13.)

### A. **Whether the RFC formulated by the ALJ fails to account for Ruggles' deficits in concentration and other mental limitations.**

RFC is what an individual can still do despite his limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and he must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures

used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

As to Ruggles' claim that the ALJ failed to account for his deficits in concentration and other mental limitations which he asserts were clearly established in the record, Ruggles argues: "The medical evidence establishes, without question, that [Ruggles] has deficiencies of concentration, persistence and pace that would affect his ability to work." (Pl. Br. at 14.) Ruggles points out that his treating physicians noted the side effects of his medications. (*Id.*, citing Tr. 61, 66, 570, 580, 755, 752, 779, 780.) He also complains that the ALJ ignored the opinion of the non-examining State Agency doctor, Caren Phelan, Ph.D. ("Phelan"). (Pl. Br. at 14; Tr. 23, 580-82.) Ruggles also argues that the ALJ ignored the evidence, including the testimony of the medical examiner at the hearing, which indicated that Ruggles' medications "would make him sleepy and affect his ability to concentrate, maintain attention, and complete tasks in a timely manner." (Pl. Br. at 14; (Tr. 65-67.)

In formulating Ruggles' RFC, however, the ALJ limited Ruggles to jobs at a reasoning level of 1 or 2, which equates to the ability to understand and carry out simple one- or two-step instructions or the ability to carry out detailed but uninvolved written or oral instructions, respectively. (Tr. 20, citing *DOT* at 1011.) The ALJ further limited Ruggles to jobs that did not require extensive and involved contact with the public, supervisors, or co-workers, such as negotiating, selling, or resolving customer complaints for an employer. (Tr. 20.)

The ALJ also considered Ruggles' positive response to medications he took for depression and anxiety. (Tr. 24; *see also* Tr. 512-13, 519, 521, 524, 526, 528.) The record reflects that Ruggles' medications improved his conditions. (*Id.*) His treating psychiatrist, Robert C. Knipstein, M.D. ("Knipstein"), noted more than once that Ruggles was "stable" or that he was "feeling pretty good" while on his medications. Impairments that can be reasonably remedied or well-controlled

by medication or medical treatment are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

Ruggles' argument that the ALJ ignored the opinion of the State Agency physician likewise fails. Although Phelan checked a box listing the cognitive limitations Ruggles identifies in Section I of the Mental Residual Functional Capacity Assessment ("MRFC") she completed, the ultimate RFC she formulated in Section III of the MRFC stated that Ruggles could "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately [with] co-workers and supervisors," and "respond appropriately to changes in [a] routine work setting." (Tr. 582.)

According to the Commissioner's Programs Operations Manual System ("POMS") the purpose of Section I of the MRFC, which contains the limitation that Ruggles claims should not have been left out of his RFC, is "chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis." POMS § DI 25020.010A.3.b. This worksheet aids the physician "in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Id.* at § DI 24510.060B.2; *see also Gardner v. Astrue*, No. 4:10-CV-226-A, 2011 WL 2292179, at *7 (April 19, 2011).

On the other hand, Section III of the MRFC, which is titled "Functional Capacity Assessment,"

> is for recording the mental RFC determination. *It is in this section that the actual mental RFC assessment is recorded*, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.

*Id.* at § DI 24510.060B.4.a (emphasis added); *see also Gardner*, 2011 WL 2292179 at *7.

Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to include or discuss the items from Section I of the form in assessing Ruggles' RFC as it did not contain the actual opinion of the State Agency physician as to Ruggles' RFC. Rather, the actual mental RFC assessment is contained in Section III. As mentioned previously, Phelan opined in Section III of the MRFC that Ruggles can, *inter alia*, attend and concentrate for extended periods..." (Tr. 582.)

Moreover, although a *DOT* reasoning level of 2 requires the ability to carry out detailed instructions, the specific jobs that the VE identified did not require the ability to understand and remember detailed instructions. (Tr. 68-72.) The Fifth Circuit has recognized that "a vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The Court has held that "the value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*

Finally, Ruggles contends that the ALJ failed to consider the ME's testimony regarding Ruggles' deficits in concentration, persistence, and pace due to the side effects of his medications. (Tr. 68-72.) In response to a question from the ALJ regarding Ruggles' limitations as far as concentration was concerned, the ME responded as follows:

> I think what I said is it would be difficult – first of all, difficulties with concentration. Secondly, it leaves some question about his ability to on a sustained basis carry out an eight-hour day, workday, just because of the medication with drowsiness, with some lack of focus and this kind of thing. Getting more specific into concentration, I'm not quite sure how to answer that except, you know, certainly very focused, very intensive tasks, I mean doing accounting work or something this I don't think would be very – for example, it would be very difficult – ...you know, where one has to maintain, I think it would be very difficult. I think our VE could help more on this than I can.

(Tr. 65-66.)

A moment later, when asked whether, based upon the medical records alone, Ruggles would be able to work an eight-hour day on a regular and continuing basis, the ME answered "yes." (Tr. 67.) When the ALJ asked him if his answer would be the same if he factored in Ruggles' testimony

- 10 -

along with what the ME would reasonably expect from Ruggles' impairments, the ME responded that it would not likely be possible for Ruggles to do so on a sustained basis. (*Id.*)

An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* The ALJ alone is the fact-finder, and he has the sole responsibility for weighing the evidence and choosing whichever opinion is best supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The Court finds that the ALJ did not err in his RFC determination by failing to account for Ruggles' deficits in concentration and other mental limitations.

### B. Whether the ALJ gave adequate weight to Ruggles' testimony and to the evidentiary documents Ruggles submitted describing his limitations from pain.

The record is clear that the ALJ considered a number of factors, including: (1) findings from medical examinations, (2) information and observations provided by Ruggles' treating physicians and third parties, (3) the testimony of the medical examiner, and (4) Ruggles' own report of his daily activities in determining that his subjective complaints were not credible to the extent he claimed. (Tr. 18-24.) Thus, the ALJ clearly indicated the credibility choices he made and the basis he used for making those choices. *See Hollis*, 837 F.2d at 1385; *see also* 20 C.F.R. § 404.1529 (ALJ will consider the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); SSR 96-7p (discussing factors used in credibility determination).

First, the ALJ found that the medical evidence showed that Ruggles's impairments were not totally disabling. (Tr. 18-24.) There is substantial evidence in the record to support his choice to credit the medical records over Ruggles's subjective testimony. These medical records include physical examinations and records that revealed no bone deformity, bone pain, joint pain, muscle pain, extremity pain, cyanosis, or edema, with good muscle tone in the extremities. (Tr. 229, 249,

314, 374, 512, 515, 522, 604, 781.) Despite these positive findings, the ALJ nevertheless imposed significant functional limitations on Ruggles, including 1) a sit-stand option; 2) only occasional climbing of ramps or stairs; 3) occasional balancing, stooping, kneeling, crouching, and crawling; 4) no exposure to unprotected dangerous machinery; and 5) no working at unprotected heights such as climbing ladders, scaffolds, or ropes. (Tr. 20.) The ALJ also properly considered Ruggles' positive response to the medication he was prescribed to control chronic pain. (Tr. 22; 269, 344, 517, 519, 521, 525, 529.) As the Court stated previously, conditions that can be well-controlled with medication are not disabling. *Johnson*, 864 F.2d at 348 (5th Cir. 1988). Moreover, in order for pain itself to be considered disabling, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (citing *Hanes v. Hedder*, 707 F.2d 162, 166 (5th Cir. 1983)). Finally, the ALJ noted that Ruggles had not been treated for adenocarcinoma (cancer) since November 2006. (Tr. 21, 55.)

It is apparent that the ALJ considered the record as a whole and concluded that Ruggles was capable of performing sustained work activity. (Tr. 18-26.) He did not simply disregard Ruggles' impairments, but rather placed significant limitations on his ability to work. (Tr. 20-21.) Substantial evidence supports the ALJ's RFC determination, as well as his step five determination, that Ruggles could perform other work that exists in significant numbers in the national economy during the relevant time period. (Tr. 18-26.) Ruggles has failed to meet his burden of proving that he could not perform such work. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005).

An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). Substantial evidence supports the ALJ's ultimate determination that Ruggles was not disabled.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **July 1, 2011**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **July 1, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**DATE: June 17, 2011.**

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/cak